**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

Language Line Services, Inc.,                          NO. C 10-02605 JW

         Plaintiff,                              **ORDER GRANTING PLAINTIFF'S**
    v.                                                   **APPLICATION FOR PRELIMINARY**
                                   **INJUNCTION; NOMINATING SPECIAL**
Language Services Associates, LLC, et al.,           **MASTER**

         Defendants.
_____/

Presently before the Court is Plaintiff's *Ex Parte* Application for Temporary Restraining

Order and Order to Show Cause Re Preliminary Injunction. (hereafter, "Application," Docket Item

No. 3.)

The Court conducted a hearing on July 12, 2010. Counsel for Plaintiff and counsel for

Defendant Language Services Associates, Inc. ("LSA") were present. Based on the papers

submitted to date and oral argument, the Court GRANTS Plaintiff's Application for Preliminary

Injunction and nominates Mr. Tom Denver to serve as Special Master for the limited purpose of

overseeing the preservation of evidence, including the imaging of Defendants' computers.

**A.**    <u>**Factual Allegations**</u>

Plaintiff is a Delaware corporation with its principal place of business in Monterey,

California. (Complaint ¶ 2, Docket Item No. 1.) Defendant LSA is a Pennsylvania

corporation with its principal place of business in Pennsylvania, and transacts business in

California. (<u>Id.</u> ¶ 5.) Defendant Patrick Curtin is an individual residing in New York, and is

an employee of Defendant LSA. (<u>Id.</u> ¶ 3.) Defendant William Schwartz is an individual

residing in Williamsville, New York, and is an employee of Defendant LSA. (<u>Id.</u> ¶ 4.)

1    Plaintiff is engaged in the business of providing language interpretation and

2    translation services throughout the country to public agencies and private businesses.

3    (Complaint ¶ 10.)  Since its founding in the 1980s, Plaintiff has become the largest provider

4    of interpretation and translation services in the United States.  (Id.)  Defendant Curtin

5    worked for Plaintiff from August 2007 to August 2008.  (Id. ¶¶ 14-18.)  Defendant Schwartz

6    worked for Plaintiff from May 2008 to February 2010.  (Id. ¶¶ 21-27.)  Upon commencing

7    their employment, both Defendants Curtin and Schwartz signed documents in which they

8    agreed to maintain the confidentiality of certain of Plaintiff's information.  (See id. ¶¶ 14-16,

9    22-23.)  After leaving Plaintiff, both Curtin and Schwartz become employed with Defendant

10   LSA.  (See id. ¶¶ 19, 31.)

11         Defendant Curtin and others at Defendant LSA conspired to recruit Defendant

12   Schwartz to Defendant LSA, and hired him with the purpose of his bringing with him trade

13   secrets and confidential information from Plaintiff with the express purpose of harming

14   Plaintiff.  (Complaint ¶ 32.)  Defendant Schwartz secretly took with him to Defendant LSA

15   extensive amounts of Plaintiff's trade secrets and confidential information regarding

16   hundreds of Plaintiff's customers, including Plaintiff's customer list and, for each customer,

17   highly valuable trade secrets and confidential information, including pricing information,

18   actual and projected annual volumes of interpretation needs, and actual and projected

19   revenues.  (Id. ¶ 33.)  Defendant Schwartz gave this information to Defendants Curtin and

20   LSA.  (Id. ¶ 34.)  Defendant Curtin distributed the confidential information and trade secrets

21   to Defendant LSA's sales people for use in soliciting Plaintiff's customers and encouraged

22   them to do so.  (Id. ¶ 36.)

23         On the basis of the allegations outlined above, Plaintiff alleges nine causes of action: (1)

24   Misappropriation of Trade Secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal.

25   Civ. Code §§ 3426-3426.11; (2) Conversion; (3) Breach of Duty of Confidence; (4) Breach of

26   Fiduciary Duty; (5) Breach of Contract; (6) Unfair Business Practices, Cal. Bus. & Prof. Code §

27

28                                             2

United States District Court
For the Northern District of California

17200; (7) Unfair Business Practices, Cal. Bus. & Prof. Code § 17200, against Defendant LSA; (8)

Intentional Interference with Contractual Relations; and (9) Unjust Enrichment.

**B.   Preliminary Injunction**

Plaintiff moves for (1) a preliminary injunction prohibiting Defendants from using,

disclosing, or destroying any of Plaintiff's alleged confidential information in Defendants'

possession, in particular for the purpose of soliciting Plaintiff's customers, and (2) expedited

discovery as to which of Plaintiff's trade secrets Defendants misappropriated.  (See Application at 1-

2.)  Defendant LSA contends that Plaintiff has not shown that it is likely to succeed on the merits of

its claims against LSA, that Plaintiff cannot show that it would be irreparably harmed, and that

expedited discovery is not warranted.[1]

A preliminary injunction is a provisional remedy, the purpose of which is to preserve the

status quo and to prevent irreparable loss of rights prior to final disposition of the litigation.  Sierra

On-Line, Inc. v. Phoenix Software, Inc., 739 F.2d 1415, 1422 (9th Cir. 1984).  It is an extraordinary

remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.

Winter v. Natural Res. Def. Council, 129 S. Ct. 365, 375-76 (2008).  "[P]reliminary injunctive relief

is available to a party who demonstrates either (1) a combination of probable success and the

possibility of irreparable harm, or (2) that serious questions are raised and the balance of hardship

tips in its favor.  These two formulations represent two points on a sliding scale in which the

required degree of irreparable harm increases as the probability of success decreases."  Prudential

Real Estate Affiliates, Inc. v. PPR Realty, Inc., 204 F.3d 867, 874 (9th Cir. 2000).

**1.      Likelihood of Success**

Plaintiff contends that it is likely to succeed on, *inter alia*, its CUTSA claim because

Defendant Schwartz took Plaintiff's alleged confidential customer information when he began

employment with Defendant LSA and Defendants used the information to solicit Plaintiff's

---

[1]  (See Defendant LSA's Opposition to Application for Preliminary Injunction at 1-2, hereafter, "Opp'n," Docket Item No. 22; Defendant LSA's Supplemental Memorandum in Opposition to Application for Preliminary Injunction at 1-2, hereafter, "Suppl. Opp'n," Docket Item No. 32.)

customers and compete against Plaintiff.  (Application at 14-18.)  Defendant LSA concedes that

Defendants Schwartz and Curtin impermissibly used Plaintiff's customer information, but contends

that Plaintiff cannot prove its claims against Defendant LSA because (1) Defendants Schwartz and

Curtin acted in violation of the written policies that they agreed to when they began employment

with Defendant LSA, (2) Defendant LSA did not benefit from the misappropriation, and (3)

Defendant LSA's executive and management team did not know of the misappropriation.  (Opp'n at

7-17.)

Under the California Uniform Trade Secret Act, a "trade secret" is "information, including a

formula, pattern, compilation, program, device, method, technique, or process," that:

> (1)   Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and
>
> (2)   Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Cal. Civ. Code § 3426.1(d).  Under the California Uniform Trade Secret Act, "a prima facie claim

for misappropriation of trade secrets requires the plaintiff to demonstrate: (1) the plaintiff owned a

trade secret, (2) the defendant acquired, disclosed, or used the plaintiff's trade secret through

improper means, and (3) the defendant's actions damaged the plaintiff."  Sargent Fletcher, Inc. v.

Able Corp., 110 Cal. App. 4th 1658, 1665 (Cal. Ct. App. 2003).  "'Improper means' includes theft,

bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or

espionage through electronic or other means."  Cal. Civ. Code § 3426.1(a); Sargent Fletcher, 110

Cal. App. 4th at 1666.

"Under the doctrine of respondeat superior, an innocent employer may be liable for the torts

its employee commits while acting within the scope of his employment."  Yamaguchi v. Harnsmut,

106 Cal. App. 4th 472, 481 (Cal. Ct. App. 2003).  " [T]he determining factor in ascertaining whether

an employee's act falls within the scope of his employment for respondeat superior liability is not

whether the act was authorized by the employer, benefited [sic] the employer, or was performed

specifically for the purpose of fulfilling the employee's job responsibilities."  Id.  "[Rather, an]

4

employer may[] be vicariously liable for the employee's tort—even if it was malicious, willful, or criminal—if the employee's act was an outgrowth of his employment, inherent in the working environment, typical of or broadly incidental to the employer's business, or, in a general way, foreseeable from his duties." Id. at 482.

The parties have submitted the following evidence relevant to the issue of whether Defendants misappropriated Plaintiff's alleged confidential information or trade secrets:

(1)     Defendant Schwartz had Plaintiff's information when he started to work at Defendant LSA.[2]

(2)     Defendant Schwartz gave to Defendant Curtin a document which included the names of Plaintiff's customers and estimated minutes of over the phone language interpretation services and revenue regarding each customer.  (Id.)

(3)     In or around late April and early May of 2010, Defendant Curtin shared portions of the information from that document with four of Defendant LSA's sales representatives.[3]  (Id.)

(4)     Several of those sales representatives attempted to contact customers listed in the document, but none of the sales representatives were successful in securing any business from those prospective customers.  None of those sales representatives recall which customers they contacted.[4]

(5)     Defendant Schwartz used the customer list to contact Ntelos, Inc., National Legal Aid Defenders Association, and Liberty Mutual.  (Seefahrt Decl. ¶ 12.)

United States District Court

For the Northern District of California

---

[2]  (Declaration of Art Seefahrt in Support of Defendant LSA's Opposition to Plaintiff's Application for Preliminary [Injunction] ¶ 12, hereafter, "Seefahrt Decl.," Docket Item No. 23.)

[3]  (Id.; Declaration of Scott Coburn in Support of Defendant LSA's Opposition to Plaintiff's Application for Preliminary Injunction ¶¶ 4-5, hereafter, "Coburn Decl.," Docket Item No. 25; Declaration of Dustin Graham in Support of Defendant LSA's Opposition to Plaintiff's Application for Preliminary Injunction ¶¶ 3-4, 7, hereafter, "Graham Decl.," Docket Item No. 26; Declaration of Eric Hope in Support of Defendant LSA's Opposition to Plaintiff's Application for Preliminary Injunction ¶¶ 3-4, hereafter, "Hope Decl.," Docket Item No. 27; Declaration of Jim Pastore in Support of Defendant LSA's Opposition to Plaintiff's Application for Preliminary Injunction ¶¶ 3-4, hereafter, "Pastore Decl.," Docket Item No. 28.)

[4]  (Seefahrt Decl. ¶ 12; Coburn Decl. ¶ 5; Graham Decl. ¶ 4; Hope Decl. ¶ 4.)

United States District Court

For the Northern District of California

(6)    At least one major customer of Plaintiff has started giving business to Defendant LSA as a result of Defendant LSA having knowledge of Plaintiff's pricing for that customer.[5]

Based on the evidence above, the Court finds that Plaintiff has established a reasonable likelihood that it will succeed on its CUTSA claim.  Defendant LSA does not dispute that the information at issue was confidential—a list of Plaintiff's customers with actual and projected volume of service and revenues for each customer—or that Plaintiff's competitors could derive economic value from the information.  Plaintiff used reasonable efforts to maintain the secrecy of its information by requiring both Defendant Schwartz and Curtin to agree to maintain the confidentiality of the information during and after their employment with Plaintiff.[6]  Thus, Plaintiff has adequately shown that its information was a trade secret.

It is undisputed that Defendants acquired and used the trade secret through improper means when Defendant Schwartz took the information without authorization upon commencing employment with Defendant LSA and Defendant Curtin distributed the information to several of Defendant LSA's sales representatives, who then used the information to solicit Plaintiff's customers.  Defendant LSA's contention that it cannot be liable for the acts of Defendants Schwartz and Curtin because their actions violated Defendant LSA's policies and were not known to Defendant LSA's executives is without merit.  Defendants Schwartz and Curtin acted within the scope of their employment, since an act of this nature was generally foreseeable as part of their duties to solicit customers for Defendant LSA.  See Yamaguchi, 106 Cal. App. 4th at 481-82.  Defendant LSA recognized this possibility when it required Defendants Schwartz and Curtin to

---

[5]  (Declaration of Karen Gilhooly in Support of Plaintiff's Application for (A) Temporary Restraining Order; and (B) Order to Show Cause Re: Preliminary Injunction ¶ 17, hereafter, "Gilhooly Decl.," Docket Item No. 6.)  The Court DENIES Defendant LSA's Objections to Plaintiff's declarations because (1) most of the statements at issue were not relied on by the Court, (2) the Court finds the documents at issue adequately authenticated, and (3) the Court has wide discretion to consider sworn testimony made on information and belief when evaluating a motion for preliminary injunction.  See Houdini v. Goody Baskets LLC, 166 Fed. Appx. 946, 947 (9th Cir. 2006); Repub. of Phillippines v. Marcos, 862 F.2d 1355, 1363 (9th Cir. 1988).

[6]  (See Declaration of Steven Weinberg in Support of Plaintiff's Application for (A) Temporary Restraining Order; and (B) Order to Show Cause Re: Preliminary Injunction, hereafter, "Weinberg Decl.," Exs. F-I, Docket Item No. 10.)

**United States District Court**
For the Northern District of California

1   agree to Defendant LSA's policy prohibiting the unauthorized use of a prior employer's confidential

2   information.  (See Seefahrt Decl. ¶ 9, Exs. 1-2.)  Further, Plaintiff has submitted evidence that it has

3   already suffered harm in that at least one customer has started to give business to Defendant LSA as

4   a result of Defendant LSA having Plaintiff's alleged confidential customer information.  Thus, the

5   Court finds that Plaintiff has shown a likelihood of success on the merits of its CUTSA claim.

6               **2.      Possibility of Irreparable Harm**

7               Plaintiff contends that it faces a risk of irreparable harm from, *inter alia*, lost customers and

8   goodwill.  (Application at 20-21.)  Defendant LSA contends that any harm to Plaintiff can be

9   remedied by money damages.  (Opp'n at 22.)

10              Courts in this district have recognized that a plaintiff can show a possibility of irreparable

11  harm by showing that it is at risk of losing customers and goodwill to a competitor as a result of the

12  theft of the plaintiff's trade secrets.  See Gallagher Benefits Servs. v. De La Torre, No C 07-5495

13  VRW, 2007 U.S. Dist. LEXIS 87139, at *14 (N.D. Cal. Nov. 20, 2007), vacated in part on other

14  grounds by 283 Fed. Appx. 543 (9th Cir. 2008); Lillge v. Verity, No. C 07-2748 MHP, 2007 U.S.

15  Dist. LEXIS 73543, at *20 (N.D. Cal. Oct. 2, 2007).

16              Here, the Court finds that Plaintiff has established a risk of irreparable harm.  Defendants

17  admit that their sale representatives have solicited numerous customers listed in Plaintiff's alleged

18  confidential information.  (Seefahrt Decl. ¶ 12; Coburn Decl. ¶ 5; Graham Decl. ¶ 4; Hope Decl. ¶

19  4.)  Although Defendant LSA has temporarily suspended Defendants Schwartz and Curtin until July

20  16, 2010, and has instructed them to not contact any current or existing customers of Defendant

21  LSA, the Court finds this inadequate to completely remove the risk that any of Defendant LSA's

22  employees might contact Plaintiff's customers.  (See Seefahrt Decl. ¶ 13.)  Thus, the Court finds that

23  Plaintiff faces a risk of irreparable harm in the form of lost customers and goodwill.[7]

24              Accordingly, the Court GRANTS Plaintiff's Motion for Preliminary Injunction.

25  ─────────────────

26       [7]  Since the Court finds this ground sufficient as to irreparable harm, the Court does not reach
    Plaintiff's contention that it faces irreparable harm from the potential destruction of evidence by
27  Defendants.

28                                        7

**C.      Nomination of a Special Master**

At the hearing, the Court suggested the appointment of a Special Master for the limited purpose of overseeing the preservation of evidence, including the imaging of Defendants' computers. The parties were agreeable. Due to the parties' consent and the cost savings to the parties which will result from a more focused management of the preservation of evidence, the Court concludes that the appointment of a Special Master would be beneficial to all. Pursuant to FED. R. CIV. P. 53, the Court notifies the parties of its intent to appoint a Special Master:

**1.      Scope of the Special Master's Appointment**

The Special Master shall preside over all proceedings, with the power to hear and make reports and recommendations on the following pretrial matters:

a.      Preservation of any of Plaintiff's alleged confidential information in the possession of Defendants;

b.      Forensic imaging and analysis of Defendant LSA's computer systems and servers, including laptop computers in the possession of Defendants Curtin and Schwartz and other sales representatives' computers and laptops, for the purpose of ascertaining the extent of Plaintiff's alleged confidential information in Defendants' possession. The Special Master shall have the power to select an independent third party to perform the forensic imaging and analysis; and

c.      Defendants' communications with any customers appearing in Plaintiff's alleged confidential information.

The Special Master shall exercise the power necessary or proper to regulate all proceedings before him and shall do all acts and take all measures necessary or proper for the efficient performance of his duties under this Order.

The Special Master shall file numbered interim reports or recommendations to the extent relevant which: 1) advise this Court of the status of the case, and 2) recommend the disposition of any matter heard by him. The parties shall have ten (10) days from the date an interim report or recommendation is filed to file any objections. Any party opposing the objection(s) shall file an opposition within ten (10) days after the objection is filed. If no objection is filed, the Special Master's report or recommendation shall become a binding Order of the Court and the parties shall comply with the Order. If, however, an objection is filed, the matter shall be deemed submitted to

United States District Court

For the Northern District of California

the Court without oral argument twenty (20) days after the Special Master's report or recommendation is filed–unless an application is made and the Court orders the matter to be scheduled for hearing.

Reports or recommendations pertaining to non-dispositive motions or pretrial discovery matters shall be reconsidered by this Court only where the Special Master's report or recommendation is clearly erroneous or contrary to law.

### 2.   Fees and Costs of Special Master

Unless the Court receives a recommendation from the Special Master for some other apportionment, each party shall bear the cost of the Special Master on a *per capita* basis, payable in advance. Upon the appointment of the Special Master, the parties shall meet and confer with the Master and develop a plan to set up a trust account whereby the parties shall deposit, initially, $10,000 each to cover the anticipated fees and costs. The Special Master shall issue statements to the parties and draw from the trust account every 30 days for his performance of the appointment. The Special Master will bill at the rate of $600.00 per hour.

The Special Master shall report to the Court on a periodic basis, every 90 days, regarding the state of his fees and expenses and make a recommendation to the Court as to whether the trust account needs additional deposits from the parties as the case progresses.

### 3.   Nomination of Special Master

The Court nominates Tom Denver of Mediation Masters.[8] The parties shall file any objections to Mr. Denver being named as Special Master on or before **July 20, 2010**. In their objections, the parties shall provide alternate nominations.

### D.   Conclusion

The Court GRANTS Plaintiff's Motion for a Preliminary Injunction. Once the appointment of the Special Master is completed, the parties may immediately conduct discovery for the limited purpose of preserving evidence, including imaging of Defendant's computers.

---

[8] Mr. Denver is with Mediation Masters and may be reached at (408) 280-7883.

United States District Court

For the Northern District of California

The Court preliminary enjoins Defendants, their agents, servants, employees, those with powers of attorney on Defendants' behalf, and all persons in active concert or participation with any of them, who receive actual notice of this Order, by personal service or otherwise, and each of them, from engaging in the following activity with respect to Plaintiff's alleged confidential information:

(1)   Using, disclosing, copying, divulging, exposing, disseminating, selling, distributing, transmitting or otherwise misappropriating any of the information or data (a) in the compilation emailed from Patrick Curtin to Bryan Lucas on May 5, 2010, identified as the "Brian List" comprised of the list of 208 Language Line customers and the sensitive and confidential volume, revenue and fee information for each such client, (b) in the confidential Language Line report known as the "September 2009 Report," and (c) any and all other Language Line proprietary, confidential or trade secret information obtained by Defendants Schwartz or Curtin during or after their employment with Plaintiff including any of Plaintiff's customer lists and all non-public and confidential documents and records that contain customer-related data generated, developed and compiled by Plaintiff including information regarding (a) the per-minute charges for each customer, (b) annual number of minutes of interpretation of each customer, (c) the annual revenue of each customer, and (d) volume and revenue trends (all information in this paragraph collectively referred to as "Trade Secrets");

(2)   Destroying, erasing, deleting, incapacitating, removing, corrupting or concealing any document or record (in whatever format) containing Plaintiff's Trade Secrets; and

(3)   Contacting, communicating, soliciting, dealing, or doing business with any of the customer or their representatives appearing on the Brian List, the September 2009 Report, or any other document or records containing any of Plaintiff's Trade Secrets, except where Defendant LSA has an existing contractual relationship with such a customer that was not obtained using any of Plaintiff's Trade Secrets, and only to the

10

extent necessary for Defendant LSA to satisfy its currently existing contractual obligations to that customer.

(4)     Within five business days from the date of appointment of a Special Master, Defendants shall deliver to the Special Master any and all originals, duplicates, reprints or copies of the Brian List, the September 2009 Report, or any other document or records containing any of Plaintiff's Trade Secrets.

Dated:  July 13, 2010

_____
JAMES WARE
United States District Judge

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Robert L. Meylan rmeylan@murphyrosen.com
Steven Marc Weinberg smweinberg@cdas.com

**Dated:  July 13, 2010**                                   **Richard W. Wieking, Clerk**


                                                         **By:      /s/ JW Chambers          **
                                                               **Elizabeth Garcia**
                                                               **Courtroom Deputy**

United States District Court
For the Northern District of California