1
2
3
4
5
6
7          IN THE UNITED STATES DISTRICT COURT
8        FOR THE NORTHERN DISTRICT OF CALIFORNIA
9             SAN FRANCISCO DIVISION

10  Language Line Services, Inc.,                NO. C 10-02605 JW

11                   Plaintiff,          **ORDER GRANTING IN PART AND
                                          DENYING IN PART COUNTER-**
           v.                            **DEFENDANT LANGUAGE LINE'S ANTI-**
12                                        **SLAPP MOTION AND COUNTER-**
    Language Services Associates, LLC, et al.,  **DEFENDANT LANGUAGE LINE'S**
13                                        **MOTION TO DISMISS**
                   Defendants.
14  _____/

15                    **I. INTRODUCTION**

16         Language Line Services, Inc. ("Language Line") brings this diversity action against

17  Language Services Associates, LLC ("LSA"), Patrick Curtin and William Schwartz (collectively,

18  "Defendants"), alleging, *inter alia*, misappropriation of trade secrets and conversion.  Language

19  Line alleges that Defendants stole Language Line's confidential customer list and accompanying

20  pricing information and distributed this information to LSA's salespeople for use in soliciting

21  customers.

22         LSA brings a cross-action against Language Line and Brian Lucas ("Third Party Defendant"

23  or "Lucas") alleging use of false and misleading statements in commerce under 15 U.S.C. § 1125(a),

24  wrongful injunction and a number of state law claims.  LSA alleges that Language Line and Lucas

25  conspired to misappropriate trade secrets from LSA, and used those trade secrets to obtain a

26  "wrongful" injunction that prohibits LSA from contacting prospective customers.  LSA further

27  alleges that Language Line has engaged in an ongoing campaign to disseminate falsehoods

28  regarding LSA in an effort to undermine its business.

1    Presently before the Court are Language Line's Anti-SLAPP Motion[1] and Language Line's

2    Motion to Dismiss.[2]  The Court finds it appropriate to take the Motions under submission without

3    oral argument.  <u>See</u> Civ. L.R. 7-1(b).  Based on the papers submitted to date, the Court GRANTS in

4    part and DENIES in part Language Line's Anti-SLAPP Motion and GRANTS Language Line's

5    Motion to Dismiss as to the remaining Counterclaim.

6                                    **II.  BACKGROUND**

7        A detailed summary of the factual allegations of Language Line's underlying Complaint

8    against LSA is provided in the Court's December 9, 2010 Order.[3]  Language Line is a Delaware

9    corporation with its principal place of business in Monterey, California.[4]  LSA is a Pennsylvania

10   corporation with its principal place of business in Pennsylvania.  (<u>Id.</u> ¶ 5.)  In a Second Amended

11   Complaint filed on April 11, 2011, Language Line alleges six causes of action: (1) Misappropriation

12   of Trade Secrets under the California Uniform Trade Secrets Act ("CUTSA"), Cal. Civ. Code §§

13   3426-3426.11; (2) Conversion; (3) Breach of Contract; (4) Breach of Fiduciary Duty; (5) Breach of

14   Confidence; and (6) Use of False and Misleading Statements in Commerce, 15 U.S.C. § 1125(a).

15   (<u>See</u> <u>id.</u>)

16        In a Counterclaim[5] filed on May 2, 2011, LSA alleges as follows:

17        LSA is a global language service provider offering interpretation and translation

18        services.  (Counterclaim ¶ 3.)  Language Line is the world's largest provider of over-the-

19        phone interpretation services, and is at least ten times the size of LSA based on revenue.  (<u>Id.</u>

20   _____

21        [1]  (Motion to Strike Counterclaim and Each Claim for Relief Pursuant to California Code of
     Civil Procedure 425.16; Memorandum of Points and Authorities; Request for Attorneys' Fees,
22   hereafter, "Anti-SLAPP Motion," Docket Item No. 153.)

23        [2]  (Motion to Dismiss Language Service Associates, Inc.'s Counterclaim under FRCP
     12(b)(6), hereafter, "Motion to Dismiss," Docket Item No. 152.)

24        [3]  (Order Denying Defendants Curtin and Schwartz's Motion to Dismiss for Lack of Personal
     Jurisdiction, hereafter, "December 9 Order," Docket Item No. 106.)
25
          [4]  (Second Amended Complaint ¶ 2, hereafter, "SAC," Docket Item No. 139.)
26
          [5]  (Language Services Associates, Inc.'s Counterclaims Against Language Line Services, Inc.
27   and Third Party Complaint Against Bryan Lucas, hereafter, "Counterclaim," Docket Item No. 141.)

28                                         2

¶ 4.) As Language Line has been increasingly unable to remain competitive against smaller and more efficient companies such as LSA, it has become increasingly dependent on a strategy of conquering through litigation what it cannot otherwise obtain through bona fide competition in the marketplace. (Id. ¶ 5.) Language Line's hostility towards LSA is tied to LSA's rejection of an offer to be purchased by Language Line in 2009. (Id. ¶ 9.) When the CEO of LSA rejected this purchase offer, the CEO of Language Line told her that her rejection did not matter because Language Line "has a strong legal department and will prevail in growing its business through legal actions." (Id. ¶ 11.)

In this case, Language Line has improperly convinced the Court to issue extraordinary injunctive relief, which is preventing LSA from competing for the business of over 1200 companies. (Counterclaim ¶ 12.) This injunction is overbroad in numerous regards. (Id. ¶ 16.) Language Line was aware of the overbreadth of the injunction at the time it applied for the preliminary injunction. (Id. ¶ 17.)

Lucas, who was originally an employee of Language Line, infiltrated LSA as a salesperson, stole LSA's trade secrets and attempted to blackmail LSA's executives with confidential information and trade secrets. (Counterclaim ¶ 50.) Language Line aided and abetted Lucas in infiltrating LSA's sales and executive ranks so he could serve as a mole in trafficking valuable information to Language Line. (Id. ¶ 24.) Lucas was then fired from LSA, and now works again for Language Line. (Id.) This employment is in violation of the statutory, common law and contractual duties that he owes to LSA. (Id. ¶ 25.)

Language Line used the confidential information obtained from Lucas and other information to apply for and obtain an overbroad preliminary injunction. (Counterclaim ¶ 77.) This conspiracy, along with other improper conduct by Language Line and Lucas, has cost LSA in excess of $50 million in lost revenues and business opportunities. (Id. ¶ 26.)

Language Line has further used the existence of the wrongful injunction to defame LSA by falsely informing various customers of LSA that its business model is "risky," that it is going "bankrupt" and that its employment practices are "illegal." (Counterclaim ¶ 87.)

1    Language Line's outside general counsel has published articles on behalf of Language Line

2    that assert that it is the only company in the language interpretation industry that pays its

3    employees legally.  (Id. ¶ 90.)  Language Line has disseminated defamatory falsehoods

4    regarding LSA through e-mails, telephone calls, letters and marketing materials distributed

5    throughout the United States.  (Id.)

6    On the basis of the allegations outlined above, LSA alleges twelve causes of action: (1)

7    Misappropriation of Trade Secrets under Cal. Civ. Code §§ 3426-3426.11; (2) Civil Conspiracy; (3)

8    Wrongful Injunction; (4) Trade Libel; (5) Slander and Libel; (6) Use of False and Misleading

9    Statements in Commerce under the Lanham Act; (7) Intentional Interference with Prospective

10    Economic Advantage; (8) Tortious Interference with Customer Contract; (9) Tortious Interference

11    with Employment Contact; (10) Unfair Competition in Violation of California Business and

12    Professions Code §§ 17200, *et seq.*; (11) Conversion; and (12) Breach of Contract.

13    Presently before the Court are Language Line's Anti-SLAPP Motion and Language Line's

14    Motion to Dismiss.

15    **III.  STANDARDS**

16    **A.**    **Anti-SLAPP Motion**

17    The Ninth Circuit has "determined that California anti-SLAPP motions to strike and

18    entitlement to fees and costs are available to litigants proceeding in federal court, and that these

19    provisions do not conflict with the Federal Rules of Civil Procedure."  Thomas v. Fry's Electronics,

20    Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (citing United States ex rel Newsham v. Lockheed

21    Missiles & Space Co., 190 F.3d 963, 972-73 (9th Cir. 1999)).  The anti-SLAPP statute was passed in

22    response to concern over an increase in meritless lawsuits brought against private individuals to gain

23    economic advantage and to deter them from exercising their political and legal rights.  Wilcox v.

24    Superior Court, 27 Cal. App. 4th 809, 816 (Cal. Ct. App. 1994).  The anti-SLAPP statute permits a

25    special motion to strike such claims; it provides:

26          A cause of action against a person arising from any act of that person in furtherance of the

27          person's right of petition or free speech under the United States or California Constitution in
           connection with a public issue shall be subject to a special motion to strike, unless the court

28

determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

Cal. Civ. Proc. Code § 425.16(b)(1).

To prevail on an anti-SLAPP motion, a defendant must first meet its burden of showing that the acts underlying the plaintiff's claims were protected activity, as defined by the anti-SLAPP statute. See Ruiz v. Harbor View Comm. Ass'n, 134 Cal. App. 4th 1456, 1466 (Cal. Ct. App. 2005). If the defendant meets its initial burden of showing that the act underlying the plaintiff's cause of action is subject to the anti-SLAPP statute, "the burden then shifts and the plaintiff must show a probability of prevailing on the claim." Id. "The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit." Id. (citation omitted). To satisfy its burden, the plaintiff must "establish, with admissible evidence, a reasonable probability of prevailing on the merits." Kreeger v. Wanland, 141 Cal. App. 4th 826, 831 (Cal. Ct. App. 2006) (citation omitted).

Although not defined in the anti-SLAPP statute, a matter of public interest is one that is "something of concern to a substantial number of people." Weinberg v. Feisel, 110 Cal. App. 4th 1122, 1132 (Cal. Ct. App. 2003) (citing Dun & Bradstreet v. Greenmoss Builders, 472 U.S. 749, 762 (1985)). "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies." Martinez v. Metabolife Internat. Inc., 113 Cal. App. 4th 181, 188 (Cal. Ct. App. 2003). A "mixed cause of action is subject to [the anti-SLAPP statute] if at least one of the underlying acts is protected conduct, unless the allegations of protected conduct are merely incidental to the unprotected activity." Salma v. Capon, 161 Cal. App. 4th 1275, 1287 (Cal. Ct. App. 2008).

**B.** **Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint may be dismissed against a defendant for failure to state a claim upon which relief may be granted against that defendant. Dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient

5

facts alleged under a cognizable legal theory.  <u>Balistreri v. Pacifica Police Dep't</u>, 901 F.2d 696, 699

(9th Cir. 1990); <u>Robertson v. Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984).  For

purposes of evaluating a motion to dismiss, the court "must presume all factual allegations of the

complaint to be true and draw all reasonable inferences in favor of the nonmoving party."  <u>Usher v.

City of Los Angeles</u>, 828 F.2d 556, 561 (9th Cir. 1987).  Any existing ambiguities must be resolved

in favor of the pleading.  <u>Walling v. Beverly Enters.</u>, 476 F.2d 393, 396 (9th Cir. 1973).

However, mere conclusions couched in factual allegations are not sufficient to state a cause

of action.  <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986); <u>see also</u> <u>McGlinchy v. Shell Chem. Co.</u>, 845

F.2d 802, 810 (9th Cir. 1988).  The complaint must plead "enough facts to state a claim for relief

that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007).  A claim is

plausible on its face "when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 129

S. Ct. 1937, 1949 (2009).  Thus, "for a complaint to survive a motion to dismiss, the non-conclusory

'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a

claim entitling the plaintiff to relief."  <u>Moss v. U.S. Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

Courts may dismiss a case without leave to amend if the plaintiff is unable to cure the defect by

amendment.  <u>Lopez v. Smith</u>, 203 F.3d 1122, 1129 (9th Cir. 2000).

Although the court is generally confined to consideration of the allegations in the pleadings,

when the complaint is accompanied by attached documents, such documents are deemed part of the

complaint and may be considered in evaluating the merits of a Rule 12(b)(6) motion.  <u>Durning v.

First Boston Corp.</u>, 815 F.2d 1265, 1267 (9th Cir. 1987).

## IV.  DISCUSSION

**A.** **Anti-SLAPP Motion**

Language Line and Lucas move the Court to strike LSA's Counterclaim under California's

anti-SLAPP statute, on the grounds that: (1) the Counterclaim and all the claims asserted in it arise

out of Language Line's right of petition and free speech; and (2) LSA cannot meet its burden of

establishing a reasonable probability of success as to any of its claims.  (Anti-SLAPP Motion at 2-

25.)  LSA responds that: (1) the Counterclaim, and all the claims asserted in it, do not arise from activity protected by the anti-SLAPP statute; and (2) regardless, LSA has demonstrated a probability of prevailing on the claims.[6]  Language Line also moves for attorney fees, in the event the Court finds that it prevails as to any of its claims.  (Anti-SLAPP Motion at 25.)  The Court considers each of the claims asserted in the Counterclaim in turn.

### 1.    Misappropriation of Trade Secrets and Conversion

Language Line contends that the Counterclaims for Misappropriation of Trade Secrets and Conversion[7] (the "Trade Secrets Counterclaims") should be stricken under the anti-SLAPP statute, because both claims are based on Language Line's use of certain information to obtain an injunction from this Court during this litigation.  (Anti-SLAPP Motion at 7-8.)  LSA responds that the Trade Secrets Counterclaims are based on Language Line's misappropriation of two kinds of information, one of which does not arise out of activity protected by the anti-SLAPP statute, and that the anti-SLAPP statute therefore does not apply.  (Anti-SLAPP Opp'n at 9-10.)

"A cause of action 'arising from' [a party's] litigation activity may appropriately be the subject of an [anti-SLAPP motion to strike]."  Rusheen v. Cohen, 37 Cal. 4th 1048, 1056 (2006) (citation omitted).  Such activity "includes communicative conduct such as the filing, funding, and prosecution of a civil action."  Id. (citation omitted).

Here, the Trade Secrets Counterclaims depend on allegations that Language Line "stole[]" information from LSA, "including but not limited to the 'Brian List.'" (Counterclaim ¶ 100.)  The "Brian List," as the Counterclaim alleges, is a "confidential list of [Language Line's] customers" which Lucas received from an employee of LSA, and which Lucas gave to Language Line.  (Id. ¶¶

---

[6]  (Language Services Associates, Inc.'s Opposition to Plaintiff Language Line Service, Inc.'s and Third Party Defendant Bryan Lucas's Motion to Strike Counterclaim and Each Claim for Relief Therein Pursuant to California Code of Civil Procedure § 425.16; Memorandum of Points and Authorities; and Request for Attorneys Fees at 8-21, hereafter, "Anti-SLAPP Opp'n," Docket Item No. 175.)

[7]  These are the First and Eleventh Counterclaims.

63-66.) LSA further alleges that Language Line "used the confidential information from Lucas, and other information to apply for and obtain from the Court" an injunction. (Id. ¶ 77.)

Thus, the Trade Secrets Counterclaims arise from Language Line's litigation activity in this case, namely, its seeking of an injunction from the Court in the course of prosecuting this civil action. Therefore, the Trade Secrets Counterclaims are appropriately the subject of an anti-SLAPP motion. Rusheen, 37 Cal. 4th at 1056. Accordingly, the burden shifts to LSA to show that it has a probability of prevailing on the merits as to these Counterclaims. Ruiz, 134 Cal. App. 4th at 1466.

Upon review, however, the Court finds that LSA offers no evidence in support of the proposition that it has a probability of prevailing on the merits as to these Counterclaims. Instead, in its Opposition to the Anti-SLAPP Motion, LSA simply contends that Language Line has failed to meet its initial burden of showing that each of the Counterclaims falls under the ambit of the anti-SLAPP statute. (Anti-SLAPP Opp'n at 20.) Rather than offer any contentions as to its probability of prevailing on the merits as to these Counterclaims, LSA contends that it has "presented sufficient admissible evidence . . . to satisfy the second prong of the [anti-SLAPP statute]" in the form of its Opposition to the Motion to Dismiss. (Id.) However, LSA does not address the Trade Secrets Counterclaims in its Opposition to the Motion to Dismiss.[8] Thus, because LSA has not offered *any* "admissible evidence" to "establish" a probability of prevailing on the merits as to the Trade Secrets Counterclaims, the Court finds that LSA has failed to meet its burden as to these Counterclaims. Kreeger, 141 Cal. App. 4th at 831.

Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to the Trade Secrets Counterclaims.

### 2. Speech-Based Counterclaims

Language Line contends that the Counterclaims for Trade Libel and Defamation (the "Speech-Based Counterclaims") should be stricken under the anti-SLAPP statute, because both

---

[8] (See Language Services Associates, Inc.'s Response in Opposition to Plaintiff Language Line Service's Motion to Dismiss Language Services Associates Inc.'s Counterclaim Under FRCP 12(B)(6) [sic], hereafter, "Motion to Dismiss Opp'n," Docket Item No. 176.)

8

1    Counterclaims are based on a blog post written by Plaintiff's counsel.[9]  (Anti-SLAPP Motion at 9-

2    10.)  LSA responds that these claims involve commercial speech, and thus are exempt from the anti-

3    SLAPP statute under the statutory exemption for commercial speech.  (Anti-SLAPP Opp'n at 12-

4    14.)

5          Where an issue is "not of interest to the public at large, but rather to a limited, but definable

6    portion of the public (a private group, organization, or community)," the anti-SLAPP statute protects

7    activity that occurs "in the context of an ongoing controversy, dispute or discussion."  Du Charme v.

8    Inter. Broth. of Elec. Workers, Local 45, 110 Cal. App. 4th 107, 119 (Cal. Ct. App. 2003).

9          California Civil Procedure Code § 425.17 lays out several exemptions from anti-SLAPP

10   liability.  Among them is § 425.17(c), the "commercial speech exemption."  See TYR Sport Inc. v.

11   Warnaco Swimwear Inc., 679 F. Supp. 2d 1120, 1142 (C.D. Cal. 2009).  However, this commercial

12   speech exception only applies to a speaker who is himself "a person primarily engaged in the

13   business of selling or leasing goods or services," and does not "apply to persons *acting on behalf* of

14   'a person primarily engaged in the business of selling or leasing goods or services.'"  All One God

15   Faith, Inc. v. Organic and Sustainable Indus. Standards, Inc., 183 Cal. App. 4th 1186, 1213-14 (Cal.

16   Ct. App. 2010) (emphasis added).

17         Here, the Speech-Based Counterclaims are based on the following alleged statements: (1) a

18   "story" that was "published . . . on the internet" by Language Line's "outside general counsel" (the

19   "Blog Post"); (2) a statement from Language Line to Farmers Insurance Group that LSA is "going

20   out of business"; and (3) two "facsimile letters" that were delivered by Language Line to employees

21   of LSA.  (Counterclaim ¶ 122.)  The Court considers the first of these statements–namely, the Blog

22

23   _____

24         [9]  These are the Fourth and Fifth Counterclaims.  Language Line also contends that the Sixth
     Counterclaim, for Use of False and Misleading Statements under 15 U.S.C. § 1125(a), should be
     stricken under the anti-SLAPP statute for the same reasons as the Speech-Based Counterclaims.
25   (Anti-SLAPP Motion at 9-10.)  However, causes of action arising under federal law are not subject
     to the anti-SLAPP statute.  See, e.g., Hilton v. Hallmark Cards, 580 F.3d 874, 881 (9th Cir. 2009)
26   (explaining that "the anti-SLAPP statute does not apply to federal law causes of action").
     Accordingly, the Court DENIES Language Line's Anti-SLAPP Motion as to the Sixth Counterclaim
27   for Use of False and Misleading Statements under 15 U.S.C. § 1125(a).

28                                              9

Post–because if it is "protected conduct" under the anti-SLAPP statute, these Counterclaims as a whole are subject to the anti-SLAPP statute.  See Salma, 161 Cal. App. 4th at 1287.

The Court finds that Language Line meets its burden of showing that the Blog Post falls within the ambit of the anti-SLAPP statute.  Language Line presents evidence that the Blog Post was written by Steven Weinberg, an attorney for Language Line, and that it was published in "an online legal news publication."[10]  Further, Language Line presents evidence that the Blog Post itself offers a general discussion of legal issues that confront the "language interpretation industry" as a whole, and in particular offers a discussion of the issue of "employee misclassification in the [language] interpretation industry."[11]  Therefore, the Court finds that the Blog Post is protected activity under the anti-SLAPP statute, as it addresses an "ongoing discussion" in the language interpretation industry, which is itself a "limited, but definable portion of the public."  Du Charme, 110 Cal. App. 4th at 109.

LSA's reliance on the commercial speech exception to the anti-SLAPP statute in support of its contention that the Blog Post is not protected activity under the statute is misguided.  (Anti-SLAPP Opp'n at 12-14.)  Although California law does provide a commercial speech exception to the anti-SLAPP statute, California courts have clearly stated that the commercial speech exception only applies to individuals who are *themselves* "primarily engaged in the business of selling or leasing goods or services," and does not apply to individuals who are acting "on behalf of" individuals who are primarily engaged in such business.  All One God, 183 Cal. App. 4th at 1213-14.  Because the Blog Post was written and published by an attorney for Language Line, as discussed above, rather than by Language Line itself, the commercial speech exception does not apply.

_____

[10]  (Declaration of Steven M. Weinberg in Support of Plaintiff Language Line Service's Motions to Dismiss and to Strike Language Services Associates, LLC's Cross-Complaint Under FRCP 12(b)(6) at ¶¶ 1-3, hereafter, "Weinberg Decl.," Docket Item No. 150.)

[11]  (Weinberg Decl., Ex. B, "The Language Interpretation Industry's Real Dangers," hereafter, "Blog Post," Docket Item No. 150-1.)

1    Thus, the Court finds that Language Line has met its burden of showing that the anti-SLAPP

2    statute applies to the Speech-Based Counterclaims.  Accordingly, the burden shifts to LSA to show

3    that it has a probability of prevailing on the merits as to these Counterclaims.  However, as is

4    explained below in the Court's discussion of Language Line's Motion to Dismiss, the Court finds

5    that the Blog Post is protected opinion which cannot give rise to liability consistent with the First

6    Amendment.  Therefore, it necessarily follows that LSA cannot prevail on the merits as to the

7    Speech-Based Counterclaims.

8    Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to the Speech-

9    Based Counterclaims.

10    **3.    Contract-Based Counterclaims**

11    Language Line contends that the Counterclaims for Tortious Interference with Employment

12    Contract and Breach of Contract[12] (the "Contract-Based Counterclaims") should be stricken, on the

13    ground that the conduct underlying these Counterclaims is Lucas' "giving a copy of the 'Brian List'

14    to [Language Line]" for the purpose of obtaining the injunction in this case, which is protected by

15    the anti-SLAPP statute.  (Anti-SLAPP Motion at 11.)  LSA responds that these Counterclaims do

16    not involve "any type of statement or petitioning of the courts," and thus do not come "under the

17    purview" of the anti-SLAPP statute.  (Anti-SLAPP Opp'n at 18-19.)

18    Here, the Contract-Based Counterclaims are predicated on LSA's allegation that Language

19    Line "encourag[ed], instruct[ed] and caus[ed] Lucas to fraudulently obtain LSA's confidential and

20    proprietary Trade Secret Materials and encourag[ed], instruct[ed] and caus[ed] Lucas to provide the

21    Trade Secret Materials to Language Line."  (Counterclaim ¶ 166.)  In particular, LSA alleges that

22    Language Line used these Trade Secret Materials to secure its injunction against LSA.  (Id. ¶¶ 70-

23    71.)  Thus, as discussed above in relation to the Trade Secrets Counterclaims, the Contract-Based

24    Counterclaims fall under the ambit of the anti-SLAPP statute.  Accordingly, the burden shifts to

25    LSA to show that it has a probability of prevailing on the merits as to these Counterclaims.

26    —————————————————

27    [12]  These are the Ninth and Twelfth Counterclaims.

28                                                    11

1   However, as was the case with the Trade Secrets Counterclaims, LSA does not address the merits of

2   the Contract-Based Counterclaims in its Opposition to either the Anti-SLAPP Motion or the Motion

3   to Dismiss. Therefore, as discussed above in relation to the Trade Secrets Counterclaims, LSA has

4   failed to offer any "admissible evidence" to "establish" a probability of prevailing on the merits as to

5   the Contract-Based Counterclaims, which means that LSA has failed to meet its burden as to these

6   Counterclaims. Kreeger, 141 Cal. App. 4th at 831.

7        Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to the Contract-

8   Based Counterclaims.

9        **4.    Conspiracy and Unfair Competition Counterclaims**

10       Language Line contends that the Counterclaims for Civil Conspiracy and Unfair

11  Competition[13] (the "Conspiracy Counterclaims") should be stricken, because these Counterclaims

12  "rest entirely on the wrongful conduct alleged with respect to all of the other claims," and thus

13  should be stricken because all of the underlying claims should be stricken. (Anti-SLAPP Motion at

14  11.) LSA responds that the allegations supporting these Counterclaims are the "same as the

15  underlying facts" for LSA's Speech-Based Counterclaims, and because the Speech-Based

16  Counterclaims "arise from . . . commercial speech" that is exempted from the anti-SLAPP statute,

17  the Conspiracy Counterclaims should not be stricken. (Anti-SLAPP Opp'n at 19-20.)

18       Here, the Court finds that the Conspiracy Counterclaims are based on the same activity that

19  underlies the Speech-Based Counterclaims and Contract-Based Counterclaims. (See Counterclaim

20  ¶¶ 110, 170.) Thus, for the reasons discussed above, the Conspiracy Counterclaims fall under the

21  ambit of the anti-SLAPP statute. Accordingly, the burden shifts to LSA to show that it has a

22  probability of prevailing on the merits as to the Conspiracy Counterclaims. As was the case with the

23  Trade Secrets Counterclaims, LSA does not address the merits of the Unfair Competition

24  Counterclaim in its Opposition to either the Anti-SLAPP Motion or the Motion to Dismiss.

25  Therefore, as discussed above in relation to the Trade Secrets Counterclaims, LSA has failed to offer

26  

27       [13] These are the Second and Tenth Counterclaims.

28

1    any "admissible evidence" to "establish" a probability of prevailing on the merits as to the Unfair

2    Competition Counterclaim, which means that LSA has failed to meet its burden as to that

3    Counterclaim.  Kreeger, 141 Cal. App. 4th at 831.

4    As to the Civil Conspiracy Counterclaim, Civil Conspiracy is only a cause of action in

5    California if alleged to be in furtherance of an independently cognizable tort.  See Rusheen, 37 Cal.

6    4th at 1062.  LSA has alleged Civil Conspiracy in furtherance of a scheme to "violate the CUTSA,

7    defame LSA, aid and abet Lucas in breaching his Employment Agreement with LSA and

8    intentionally interfere with LSA's business relationships."  (Counterclaim ¶ 109.)  However,

9    because the Court has dismissed each of the independent torts which relate to the Civil Conspiracy

10    Counterclaim, this Counterclaim must also be dismissed, as it is not cognizable standing alone.

11    Therefore, LSA cannot meet its burden of establishing a likelihood of success on the merits as to its

12    Civil Conspiracy Counterclaim.

13    Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to the Conspiracy

14    Counterclaims.

15    **5.    Wrongful Injunction and Customer Interference**

16    Language Line contends that the Counterclaims for Wrongful Injunction, Intentional

17    Interference with Prospective Economic Advantage and Tortious Interference with Customer

18    Contracts[14] (the "Wrongful Injunction Counterclaims") should be stricken, on the ground that the

19    "gravamen" of these claims is that Language Line "sought and obtained the preliminary injunction

20    in this case."  (Anti-SLAPP Motion at 9.)  LSA responds that these Counterclaims are not grounded

21    in Language Line's "filing of the preliminary injunction motion or lawsuit *themselves*, but the

22    misrepresentations used by Language Line in obtaining, sustaining and publicizing that injunction."

23    (Anti-SLAPP Opp'n at 11-12 (emphasis in original).)

24    Here, for the reasons discussed above in relation to the other Counterclaims, the Court finds

25    that the Wrongful Injunction Counterclaims arise out of protected activity–namely, Language Line's

26    _____

27    [14]  These are the Third, Seventh and Eighth Counterclaims.

28                                                    13

1    pursuit of an injunction in this civil litigation–and thus fall under the ambit of the anti-SLAPP

2    statute.

3        LSA's reliance on <u>City of Cotati v. Cashman</u>[15] in support of its contention that the Wrongful

4    Injunction Counterclaims do not arise out of protected activity is misplaced.  (Anti-SLAPP Opp'n at

5    10-11.)  In <u>City of Cotati</u>, the California Supreme Court considered a civil action filed by a city

6    against a group of homeowners in state court after that same group of homeowners had brought an

7    action against that city in federal court.  <u>Id.</u> at 76.  The court held that the "mere fact an action was

8    filed after protected activity [namely, the first federal court lawsuit] took place does not mean it

9    arose from that activity."  <u>Id.</u> at 76-77.  The court also held that a claim "filed in response to, or in

10   retaliation for, threatened or actual litigation is not subject to the anti-SLAPP statute simply because

11   it may be viewed as an oppressive litigation tactic."  <u>Id.</u> at 78 (citation omitted).  However, the court

12   went on to hold that in the "anti-SLAPP context, the critical point is whether the plaintiff's cause of

13   action itself was *based on* an act in furtherance of the defendant's right of petition or free speech."

14   <u>Id.</u> (citation omitted) (emphasis in original).  Looking at the facts of the case before it, the <u>City of</u>

15   <u>Cotati</u> court found that the "gravamen" of both civil actions was "the same" underlying controversy,

16   which meant that the later civil action was not subject to an anti-SLAPP motion.  <u>Id.</u> at 78-80.

17   Significantly, the court found that the anti-SLAPP statute did not apply because the earlier civil

18   action in that case was not *itself* the actual controversy underlying the second one.  <u>Id.</u>  Here, by

19   contrast, the earlier litigation in this case–namely, Language Line's litigation to get an injunction–*is*

20   *itself* the underlying controversy for the Wrongful Injunction Counterclaims.  (Anti-SLAPP Opp'n at

21   11-12.)  Therefore, <u>City of Cotati</u> is inapposite.

22       Because the Court finds that Language Line meets its burden of showing that the Wrongful

23   Injunction Counterclaims fall under the ambit of the anti-SLAPP statute, the burden shifts to LSA to

24   show that it has a probability of prevailing on the merits as to these Counterclaims.  However, LSA

25   cannot meet this burden as to the Wrongful Injunction Counterclaim, because no cause of action

26

27   _____

         [15]  29 Cal. 4th 69 (2002).

28                                                    14

1   exists for Wrongful Injunction in the absence of a bond or a court-ordered payment between the

2   parties.[16] A wrongfully enjoined party may pursue a Wrongful Injunction claim only to obtain

3   payment of a previously posted bond, or to seek restitution of a payment which it was ordered to

4   make as a condition of the injunction.[17] Where no bond is posted or payment ordered, the

5   wrongfully enjoined party may seek relief only through a malicious prosecution action.  Id.  A claim

6   for malicious prosecution, however, does not accrue until after the underlying action has terminated

7   in the enjoined party's favor.[18]  In this case, the Court did not require the posting of a bond by

8   Language Line, nor did it require any payment to Language Line by LSA.[19]  Thus, Wrongful

9   Injunction is not a cause of action available to LSA, which means that LSA cannot demonstrate any

10  probability of prevailing on the merits as to it.

11        For the same reasons, LSA cannot show that it has a probability of winning on the merits as

12  to the Counterclaims for Intentional Interference with Prospective Economic Advantage and

13  Tortious Interference with Customer Contracts, both which are predicated on the Wrongful

14  Injunction Counterclaim.

15        Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to the Wrongful

16  Injunction Counterclaims.

17

18

19  _____

20        [16]  See, e.g., W.R. Grace and Co. v. Local Union 759, 461 U.S. 757, 770 n.14 (1983) (stating
    that a "party injured by the issuance of an injunction later determined to be erroneous has no action
21  for damages in the absence of a bond").

22        [17]  Buddy Systems, Inc. v. Exer-Genie, Inc., 545 F.2d 1164, 1167-68 (9th Cir. 1976)
    (concluding that in the absence of a bond there can be no recovery for damages sustained by a
23  wrongful issuance of a preliminary injunction, unless suit is brought for malicious prosecution or on
    a theory of unjust enrichment).
24
          [18]  See Hudson v. Moore Business Forms, Inc., 827 F.2d 450, 457 (9th Cir. 1987)
25  (superceded on other grounds by Hudson v. Moore Business Forms, Inc., 827 F.2d 1156 (9th Cir.
    1987)).
26
          [19]  (See Order Granting Plaintiff's Application for Preliminary Injunction; Nominating
27  Special Master, hereafter, "Order Granting Preliminary Injunction," Docket Item No. 50.)

28

**6.    Attorney Fees**

At issue is whether Language Line should be granted attorney fees for bringing its Anti-SLAPP Motion.

Even if a party only partially prevails on its anti-SLAPP motion, it is entitled to attorney fees under the anti-SLAPP statute. <u>See, e.g.</u>, <u>Albergo v. Immunosyn Corp.</u>, No. 09CV2653 DMS, 2011 WL 197580, at *8 (S.D. Cal. Jan. 20, 2011) (citing <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1109-10 (9th Cir. 2003)). If a party is "only partially successful" in its anti-SLAPP motion, then that party is "not entitled to fees and costs based on unsuccessful claims that are legally or factually unrelated to the successful claims." <u>Whitty v. First Nationwide Mortg. Corp.</u>, No. 05-CV-1021 H(BLM), 2007 WL 628033, at *14 (S.D. Cal. Feb. 26, 2007) (citation omitted).

Here, as discussed above, Language Line has partially prevailed on its Anti-SLAPP Motion. Thus, Language Line is entitled to fees and costs based on the successful claims in the Anti-SLAPP Motion. <u>Albergo</u>, 2011 WL 197580, at *8; <u>Whitty</u>, 2007 WL 628033, at *14.

Accordingly, the Court GRANTS Language Line's Anti-SLAPP Motion as to attorney fees.

**B.    <u>Motion to Dismiss</u>**

In the alternative, Language Line moves to dismiss the Counterclaims for failure to state a claim on which relief can be granted. (Motion to Dismiss at 2.) In light of the Court's disposition of the Anti-SLAPP Motion, the Court considers the Motion to Dismiss only as to the Counterclaim for False Advertising under the Lanham Act.

The Lanham Act prohibits the use of false or misleading statements in commercial advertisements. <u>See</u> 15 U.S.C. § 1125(a). The elements of a cause of action for false advertising under the Lanham Act are: (1) a false statement of fact by a defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has a tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence purchasing decisions; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured by the false statement, either by direct diversion of sales from itself to the defendant or by lessening of the goodwill

1    associated with its products.  See Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134, 1139

2    (9th Cir. 1997).

3          LSA alleges violations of the Lanham Act based on four statements by Language Line or its

4    agents: (1) an article posted on a legal discussion blog by Language Line's outside counsel, stating

5    that Language Line is the only interpretive company of which he is aware that does not classify

6    employees as independent contractors; (2) a statement on Language Line's website that it has "taken

7    the lead on [sic] 'setting standards and best practices for interpreter training and quality'"; (3) a

8    statement on Language Line's website that Language Line offers "on-site, face to face interpreters";

9    and (4) a statement on Language Line's website that customers have benefitted for over 28 years

10   from Language Line's "over-the-phone, over-video or on-site interpretation services."

11   (Counterclaim ¶ 137.)  Language Line contends that each of these statements is either protected

12   opinion, puffery or undisputably true.  (Motion to Dismiss at 10.)  The Court considers each

13   statement in turn.

14          **1.      The Blog Post**

15          At issue is whether the Blog Post by Steven Weinberg ("Weinberg"), Language Line's

16   outside counsel, is actionable under the Lanham Act.  Language Line contends that the Blog Post is

17   not actionable both because it is a news article and therefore not a commercial advertisement, and

18   because its contents are protected opinions.  (Motion to Dismiss at 10-11.)  Because the issue of

19   whether Weinberg's statements are opinions may be dispositive, the Court considers it first.[20]

20          Statements of opinion, including legal opinion, are not generally actionable as false

21   statements under the Lanham Act.  See PhotoMedex, Inc. v. Irwin, 601 F.3d 919, 931 (9th Cir.

22   2010).  However, an opinion may be actionable if it "implies an assertion of objective fact."  See,

23   e.g., Unelko Corp. v. Rooney, 912 F.2d 1049, 1053 (9th Cir. 1990).  In determining whether a

24   statement which is facially one of opinion contains implied assertions of fact, a court should inquire

25

26          [20]  The Court also questions whether Weinberg's statements on a legal blog can be properly
     attributed to his client, Language Line.  However, since Language Line did not raise this issue, the
27   Court declines to address it further.

28                                                      17

whether "the statement itself is sufficiently factual to be susceptible of being proved true or false."

Underwager v. Channel 9 Australia, 69 F.3d 361, 366 (9th Cir. 1995) (citations omitted).

Here, LSA alleges that Weinberg made false statements of fact in the Blog Post on the basis of the following excerpt:

> . . .with only one exception of which I am aware, that being Language Line Services, interpretation companies have decided that it is more important for them not to pay employee benefits and taxes than to provide the training management, supervision, quality control, and scheduling critical to ensuring effective interpretation.[21]

LSA alleges that this excerpt contains implied assertions of fact because it implies that Language Line is "the only company in the language interpretation industry that does not misclassify its employees or use independent contractors." (Counterclaim ¶ 137.) LSA further alleges that "these statements are false" because "LSA does not misclassify its employees." (Id. ¶ 138.)

Upon review, the Court finds that the statements on which LSA seeks to base its Lanham Act claim are statements of protected opinion, and do not contain any actionable implied assertions of fact. As LSA's Counterclaim acknowledges, the statement at issue implies that Language Line is the only company "that does not misclassify its employees *or* use independent contractors." (Counterclaim ¶ 137 (emphasis added).) Because the statement does contain this implied assertion, it might be actionable as to a company which claimed neither to misclassify employees nor to use independent contractors. But LSA does not dispute that it uses independent contractors. (See Counterclaim ¶ 90.) While the article goes on to offer non-favorable assessments of the risk to clients of working with companies who either use true independent contractors or who misclassify permanent employees, this risk assessment cannot be characterized as anything other than opinion. Thus, while the statement at issue does contain one implied assertion of fact, LSA has not alleged that this assertion is false. Therefore, LSA cannot state a claim as to this assertion under the Lanham Act.

_____

[21]  (See Blog Post at 2.)

18

Accordingly, the Court GRANTS Language Line's Motion as to Lanham Act claims arising from statements in the Blog Post.

### 2. The Statement that Language Line Has "Taken the Lead"

At issue is whether Language Line's statement that it has "taken the lead on setting standards and best practices for interpreter training and quality" is a statement of fact or mere puffery that is not actionable under the Lanham Act.

To be actionable on the basis of false advertising under the Lanham Act, a statement must be a "specific and measurable advertisement claim of product superiority." Southland Sod Farms, 108 F.3d at 1145. Advertising which merely states in general terms that one product is superior is not actionable. See Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990). The question of whether a statement is an actionable factual assertion or is mere puffery is a question of law which can be decided at the Rule 12(b)(6) stage. See Newcal Indus. v. IKON Office Solution, 513 F.3d 1038, 1052-53 (9th Cir. 2008). Statements which are quantifiable, or which make claims as to the "specific or absolute" characteristics of a product, will generally be actionable. See id. A general, subjective claim about a product, however, is non-actionable puffery. Id.

Here, the Court finds that the statement that one company has "taken the lead" in a given area is the sort of puffery which is not actionable under a theory of false advertising. The statement is clearly not quantifiable, and does not make claims that are verifiably true or false about any specific aspect of Language Line's product. To the contrary, the statement that one competitor has "taken the lead" in a given area is virtually indistinguishable from the statement that a competitor is "out in front" of the competition.[22] Thus, the Court finds that the statement that Language Line had "taken the lead" within a given area is not actionable under the Lanham Act.

---

[22] See, e.g., In re Century 21-RE/MAX Real Estate Advertising Claims Litig., 882 F. Supp. 915, 926-27 (C.D. Cal 1994) (finding that statement that defendant was "out in front" of industry was mere puffery).

19

Accordingly, the Court GRANTS Language Line's Motion as to the Lanham Act claims

arising from the statement that Language Line has "taken the lead."

**3.     Factually Truthful Statements**

Language Line moves to dismiss LSA's remaining Lanham Act claims on the grounds that

LSA's own allegations acknowledge the factual accuracy of the statements at issue.  (Motion to

Dismiss at 14.)  LSA contends that each statement is misleading in context and thus actionable under

the Lanham Act even if technically true.  (Motion to Dismiss Opp'n at 20.)

To demonstrate falsity, a plaintiff may show either that a statement was literally false, either

on its face or by necessary implication, or that the statement was literally true but likely to mislead

or confuse consumers.  See Southland Sod Farms, 108 F.3d at 1139.  Reactions of the public are

typically tested through consumer surveys.  Id.  In determining falsity, a statement should be

analyzed in context.  Id.  However, although a misleading statement may be actionable under the

Lanham Act, courts have held that if a statement is purely factual and unambiguous, then that

statement cannot be proven to be misleading through the use of consumer surveys.  See Mead

Johnson & Co. v. Abbott Labs., 201 F.3d 883, 886 (7th Cir. 2000); Am. Italian Pasta Co. v. New

World Pasta Co., 371 F.3d 387, 393-94 (8th Cir. 2004).  As the Seventh Circuit has explained, "[the

Lanham Act] forbids misleading as well as false claims, but interpreting 'misleading' to include

factual propositions that are susceptible to misunderstanding would make consumers as a whole

worse off by suppressing truthful statements."  Mead Johnson, 201 F.3d at 886.  Thus, where a

statement is alleged to be misleading only in that it is possible that consumers could interpret it to

mean something other than what it does, that statement is not actionable under the Lanham Act.  Id.

Here, LSA alleges in pertinent part:

> [Language Line's website states that it] offers "on-site, face to face interpreters."
> (Counterclaim ¶ 137.)  [However, this statement is false] because Language Line does not
> offer 'on-site, face to face interpreters' in any area except California, and did not do so until
> this year.  (Id. ¶ 138.)  [Language Line's website also states that] "[f]or over 28 years,
> [clients] have benefited from using [Language Line's] over-the-phone, over-video or on-site
> interpretation services."  (Id. ¶ 137.)  [However, this statement is false because] Language
> Line has not offered all three services for 28 years, [and] in fact, Language Line did not have
> on-site interpretation services until 2011.  (Id. ¶ 138.)

Upon review, the Court finds that the statements at issue are unambiguously factually true, and are not actionable based on the mere possibility that consumers might interpret them to mean something other that what they plainly state. Having conceded that Language Line does offer on-site interpretive services and has offered at least one of the three services described for twenty-eight years,[23] LSA cannot state a plausible Lanham Act claim based these statements.

Accordingly, the Court GRANTS Language Line's Motion as to the Lanham Act claims arising from statements on its website.

In sum, the Court GRANTS Language Line's Motion to Dismiss as to LSA's claims under the Lanham Act. Because the Court's dismissal is based on the non-actionable nature of the statements at issue, the Court finds that granting leave to amend would be futile. Accordingly, LSA's Lanham Act Counterclaim is DISMISSED with prejudice.

### V. CONCLUSION

The Court GRANTS Language Line's Anti-SLAPP Motion as to the First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Tenth, Eleventh and Twelfth Counterclaims. The Court DENIES Language Line's Anti-SLAPP Motion as to the Sixth Counterclaim, for Use of False and Misleading Statements under 15 U.S.C. § 1125(a).

The Court GRANTS Language Line's attorney fees pursuant to the Anti-SLAPP statute. On or before **October 31, 2011**, Language Line shall file its Motion for Attorney Fees before the Special Master.

The Court GRANTS Language Line's Motion to Dismiss as to the Sixth Counterclaim.[24]

Dated: October 13, 2011

_James Ware_

JAMES WARE
United States District Chief Judge

---

[23] (See Counterclaim ¶ 138.)

[24] In light of the Court's disposition of these motions, the Court DENIES as moot Language Line's Motion to Strike under Rule 12(f). (See Plaintiff Language Line's Motion to Strike Portions of Defendant Language Services Associates, Inc.'s Counterclaims Under FRCP 12(f), Docket Item No. 154.)

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Cheryl Stephanie Chang chang@blankrome.com
Christopher Joseph Marino cmarino@holmesweinberg.com
Danielle Ochs-Tillotson dot@ogletreedeakins.com
Leigh Ann Buziak lbuziak@blankrome.com
Mark J. Nagle mnagle@murphyrosen.com
Paul D. Murphy pmurphy@murphyrosen.com
Paul D. Murphy pmurphy@murphyrosen.com
Robert L. Meylan rmeylan@murphyrosen.com
Sarah Rebecca Nichols sarah.nichols@ogletreedeakins.com
Steven Marc Weinberg smweinberg@holmesweinberg.com
Thomas H R Denver tdenver@mediationmasters.com

Dated:  October 13, 2011                    Richard W. Wieking, Clerk


                                            By:_____/s/ JW Chambers_____
                                                 Susan Imbriani
                                                 Courtroom Deputy

United States District Court
For the Northern District of California