1  BLANK ROME LLP
   Scott F. Cooper (*Pro Hac Vice*)
2  Cooper@blankrome.com
   Leigh Ann Buziak (*Pro Hac Vice*)
3  LBuziak@blankrome.com
   Michael T. Murphy (*Pro Hac Vice*)
4  Murphy-M@blankrome.com
   One Logan Square
5  130 North 18th Street
   Philadelphia, PA 19103
6  Telephone:  215.569.5487
   Facsimile:  215.832.5487
7
8  BLANK ROME LLP
   Cheryl S. Chang (SBN 237098)
9  Chang@blankrome.com
   1925 Century Park East, 19th Floor
10  Los Angeles, CA  90067
   Telephone:    424.239.3400
11  Facsimile:    424.239.3434

12  Attorneys for Defendant and Counterclaimant
   LANGUAGE SERVICES ASSOCIATES, INC.

13              **UNITED STATES DISTRICT COURT**

14      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO BRANCH**

15

16  LANGUAGE LINE SERVICES, INC., a Delaware corporation,

17                              Plaintiff,

18              vs.

19  LANGUAGE SERVICES ASSOCIATES, INC., a Pennsylvania corporation; WILLIAM SCHWARTZ, an individual; PATRICK CURTIN, an individual; and DOE DEFENDANTS 1 THROUGH 50,

20

21

22                              Defendants.

23

24

25

26

27

28

Case No. CV 10-02605RS

**DEFENDANT LANGUAGE SERVICES ASSOCIATES, INC.'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE DECLARATION OF JOSEPH CIPOLLINI, ENCE, IN SUPPORT OF PLAINTIFF LANGUAGE LINE, INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND MOTION IN LIMINE NO. 2 [DKT. 318-1]**

Hearing
Date:  April 8, 2013
Time: 8:30 a.m.
Courtroom:   Before Special Master Thomas HR Denver, by Telephone

1

# Table of Contents

2

I.      INTRODUCTION ...................................................................................... 1

II.     SUMMARY OF LANGUAGE LINE'S EVER EVOLVING POSITION............................ 3

III.    ARGUMENT ............................................................................................ 5

        A.      The Cipollini Declaration Is an Expert Opinion, Plain and Simple............................ 5

        B.      The Cipollini Declaration is Untimely Under the Deadlines Set by the Court
                and the Special Master. ........................................................................................ 6

        C.      Cipollini Cannot Testify as a Lay Witness or Offer Lay Opinions Under the
                Federal Rules of Civil Procedure or Evidence.............................................................. 9

                1.      Language Line Failed to Disclose Cipollini as a Lay Witness Under
                        Fed. R. Civ. P. 26(a)(1) or During Fact Discovery.......................................... 9

                2.      Cipollini Has <u>No</u> Personal Knowledge of the Facts in this Case
                        Beyond Those He Learned as an Expert ...................................................... 10

        D.      Language Line Concedes that Cipollini Used Forensically-Unreliable
                Software and Fails to Rebut LSA's Evidence that He Did Not "Find" the
                September 2009 Report.......................................................................................... 12

        E.      Language Line Cannot Change the Parties' Protocol at this Late Date By
                Raising the Issue in Opposition to LSA's Motion .................................................. 13

IV.     CONCLUSION....................................................................................... 14

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## I.    INTRODUCTION

The Court should strike the Declaration of Joseph Cipollini ("Cipollini Declaration").  The Language Line Opposition of April 3, 2013, confirms this result.

Language Services Associates, Inc. ("LSA") moved to exclude the Cipollini Declaration on the grounds that it was an untimely expert forensic analysis, submitted in complete disregard for the Special Master's prior ruling on this topic, and it was based upon the use of a wholly unreliable forensic tool.  Cipollini's untimely declaration and this Motion follow Cipollini's concession in his two prior reports and his deposition that he did not and could not find the September 2009 Report on LSA's computers.  Knowing that this lack of evidence places Language Line's case in a precarious position, Cipollini continued his untimely searches even after his deposition in an effort to create additional evidence to save Language Line's case on this key issue.  When Language Line tried to informally introduce this late evidence in January 2013, LSA immediately enlisted the Special Master for assistance.  The Special Master decided on February 1, 2013, the procedure Language Line had to follow for introducing this untimely evidence.  Language Line concedes it flagrantly ignored that process and, without any warning, inserted the untimely Declaration into the record two months after the conference call.

In one of the more surprising responses in this case, Language Line has elected not to disagree with LSA on most of the points in its Motion to Strike.  Instead, it makes the incredible (and in LSA's view, nonsensical) argument that Cipollini is not an expert witness at all and can testify as a lay witness.  This, in turn, apparently excuses him from all the safeguards and deadlines the Special Master and the Court put in place previously.  The Court can and should make short shrift of this opposition.  The plain words of the Cipollini Declaration make clear that he offered an expert opinion in support of Language Line's motion to exclude LSA's forensic expert – Brian Wolfinger – and in support of Language Line's motion for partial summary judgment.  The pace with which Language Line tries to distance itself from the words of its own expert add further credence to why the Declaration, its related findings, and any further testimony submitted after the deadlines should be stricken from the record.

Language Line's opposition to LSA's Motion is simultaneously a "non-response" and concession that LSA's motion should be granted.

*First,* Language Line ignores the very language of the Cipollini Declaration that LSA seeks to strike, which, by its own words, offers an expert opinion that Cipollini found an exact copy of the September 2009 Report using "forensic methodologies." Instead, Language Line relies on an entirely new and different declaration – submitted on April 3, 2013, Cipollini's *fifth* set of expert opinions – to incredibly argue that Cipollini is now a lay witness with lay opinions.

*Second,* Language Line concedes that it failed to meet all of the Court's and the Special Master's deadlines, and admits that it did not follow the procedure the Special Master set on February 1, 2013, for briefing on whether Language Line could introduce the opinions set forth in the Cipollini Declaration. It offers *no* explanation for the delay, let alone a "substantially justified" reason, or why its late submission is harmless, as required by law.

*Third,* Cipolli is neither a lay witness nor would his testimony on this subject be proper as a lay witness. He has no personal knowledge of the facts at issue in this dispute. The only evidence Cipollini can testify about is hearsay, which, as an expert, he might be able to otherwise rely on, but which he certainly cannot testify competently on as a lay witness under Federal Rules of Evidence 601 or 602. More important, he is clearly stating that he used "scientific, technical, or other specialized knowledge within the scope of Rule 702," governing expert testimony, to find the September 2009 Report. Even if Cipollini were a lay witness, which he clearly is not, he was not timely disclosed as such under Federal Rule of Civil Procedure 26(a)(1), and he would have had to have been identified almost a year ago.

*Fourth,* Language Line concedes that the *RecoverMyFiles* software Cipollini used is decidedly not accepted by digital forensic experts and is not a reliable methodology that the Court should accept into evidence.

For all of these reasons, and those set forth in LSA's opening Motion, the Cipollini Declaration, and any subsequent opinions by him on this subject matter should be stricken from the case.

2

## II.  SUMMARY OF LANGUAGE LINE'S EVER EVOLVING POSITION

The weakness of Language Line's opposition is reinforced by the timing of its conduct.  To recap, LSA's forensic expert, Brian Wolfinger, rendered his forensic opinions on November 19, 2012.  Cipollini issued his first rebuttal report on December 17, 2012.  Two days later, on December 19, 2012, Language Line argued that it found new information.  The Special Master granted Language Line an opportunity – after the Court's deadline had passed – to amend its expert's opinion.  During that call, the Special Master forewarned that he did not want an open-ended record to which Cipollini could keep adding evidence.  The Special Master analogized that, if the expert was holding five sheets of paper, he better put all five into the record now and not offer the first three now and hope to add the last ones later in the case.  There had to be a deadline and closure to the record.  The Special Master's ruling on January 3, 2013, covering *all* new information could not be clearer:

> IF the expert is going to rely on any of the newly reviewed material in formulating his opinions, he must issue a supplemental rebuttal report identifying any such.  That report must be in Mr. Cooper's [LSA's counsel] hands 5 business days prior to the deposition of the expert.

Ex. D.  The ruling clearly covered *any additional material* Cipollini intended to rely on or issue opinions about (especially including attacking Mr. Wolfinger's work).  Cipollini did, in fact, review this new material and, on January 9, 2013, issued a supplemental report, which wholly replaced his first report.  LSA's expert was deposed on January 15, 2013.  That night, Cipollini ran additional analysis – which was obviously not in either his December 17, 2012 or January 9, 2013 reports – and offered those new opinions during his deposition on January 16, 2013.  This **third** set of opinions involved Cipollini's guess that the NHL.Fantasy.xls file actually was the September 2009 Report.  On January 22, 2013, Language Line advised LSA that it had found new information and it intended to submit yet another, **fourth,** iteration of Cipollini's opnions.  This matter was brought to the Special Master for a telephone hearing on February 1, 2013.

During that call, Language Line plainly presented that its expert had found new information using "commercially available software."  It offered both to have Cipollini explain it or have Joel Resnick of Evolver run confirming tests.  Language Line's counsel suggested that Cipollini's work

3

was supplemental in nature, by using the analogy of a scuba diver who had stumbled upon found treasure.  The Special Master made short shrift of the analogy and advised Language Line that if it wanted to present this information it had to take this up by formal motion:

> I advised counsel that, if Language Line wishes to pursue this issue, they must do so through a noticed motion, directed to me. Alternatively, Language Line has the option of presenting this as a motion in limine at the time of trial , but I pointed out that counsel for LSA would have available to it at that time all existing arguments as to timeliness, prejudice, etc.

Declaration of Leigh Ann Buziak (3/26/13) ("Buziak Decl."), Ex. H.  Language Line conceded – as it must – in its opposition that it neither noticed a motion to the Special Master nor filed a motion in limine with the Court.  Instead, two months after this ruling, it slipped these exact findings into the record in the Cipollini Declaration and now clearly intends to use them for other yet unspecified purposes in this case.  The Cipollini Declaration was submitted to support Language Line's motion to exclude LSA's own forensic expert and in support of Language Line's motion for partial summary judgment.  In its current opposition, Language Line parses what was or was not covered by the February 1, 2013 ruling.  The precise point of the Special Master's ruling in February was that a noticed motion would have forced Language Line to spell out its position and get a ruling.  Having avoided this, it is now Language Line improperly seeking forgiveness, not permission.

In opposition, Language Line does not dispute that it failed to comply with the deadlines, the Special Master's procedure, or that Cipollini's methodology is unreliable.  Instead, it contends, based on yet another new, now *fifth* set of opinions by Cipollini in a declaration submitted for the first time on April 3, 2013, that Cipollini is merely a lay witness offering lay opinions.  Language Line's evading of the deadlines and creative – but baseless – tactics cannot be permitted and the Cipollini Declaration, as well as any further opinions from him submitted after January 3, 2013 must be stricken from the record and excluded at trial.

4

# III.    ARGUMENT

## A.    The Cipollini Declaration Is an Expert Opinion, Plain and Simple.

As a threshold matter, the Cipollini Declaration is the work of an expert witness and expresses expert opinions.  The fact that the software he used to reach those opinions cost less than $70.00 (and obtained a similarly low-value and unreliable result) does not in any manner convert his status or the words of what he wrote in his Declaration.

A cursory review of the Cipollini Declaration demonstrates that this is an expert opinion. Cipollini used the software, and his specialized knowledge and training, to search unallocated space and applied his training to opine that what he found was allegedly the key document in the case:

> . . . I successfully recovered three distinct versions of a computer file known as "Schwartz Run Rate-Decliners Sep. 2009.xls," which the parties to this action refer to as the "September 2009 Report," from the computer laptops LSA issued to Messrs. Curtin and Schwartz.

Buziak Decl., Ex. A, ¶ 3.

> . . . [u]sing forensic methodologies I confirmed that each of the files is in fact a version of the September 2009 Report.

*Id.* at ¶ 6.  For Language Line to argue that Cipollini was not rendering an expert opinion is absurd in view of the plain language of his own words.  He used "forensic methodologies" just like he did in each of his three prior opinions in this matter.  There can be no mistake.  Language Line inserted this Declaration into the record to try and exclude *LSA's expert* and to support a motion for partial summary judgment on the issue that LSA had possession of Language Line's information by virtue of "unallocated space."

Language Line now takes the position for the first time that the Cipollini Declaration is lay testimony and opinion.[1]  It is not, and this argument certainly was not raised when Language Line's

---

[1] To do so, Language Line relies on an entirely new and different Declaration of Joseph Cipollini, submitted for the first time on April 3, 2013, which attempts to further explain Cipollini's methodology and noticeably excludes words like "opinion" and "methodology."  Language Line is attempting to mislead the Court that this declaration is anything more than yet another – now ***fifth*** – iteration of Cipollini's expert opinions, which also must be excluded.  Language Line's submission of this brand new declaration and its complete failure to discuss the Cipollini Declaration that LSA

5

1    counsel described the scuba diving expedition of its expert to the Special Master on February 1,

2    2013.   It is only now, when Language Line realizes there is only one way to avoid the rules

3    regarding disclosure of expert testimony, that it argues the Cipollini Declaration is actually lay

4    testimony.    As explained above, merely reading the Cipollini Declaration and its conclusions

5    demonstrates unequivocally that it is expert testimony.

6           Consistent with this newly minted "lay witness" disguise, Language Line next suggests it is

7    doing LSA a favor by disclosing something it could have waited to use at trial.   Language Line has

8    never done LSA any favors and this is no exception.   Language Line knows it is making up

9    evidentiary arguments from the netherworld of unallocated space.   It needs Cipollini's evolving

10   views to defeat those of Resnick, Wolfinger and versions 1 through 3 of Cipollini's own report.

11   Calling him a lay witness to get around these problems is a *non sequitur*.   Ciopollini's views are

12   expert testimony and they should be stricken from this record and disallowed going forward.   The

13   January 3, 2013, ruling made clear: any new information that Cipollini was going to use to challenge

14   Wolfinger's findings – notably the absence of the September 2009 Report - had to be in a

15   supplemental report by January 9, 2013.   Language Line's new theory that it can introduce this

16   evidence through late declarations and at trial flies in the face both the January 3, 2013 ruling and

17   the follow-up order to notice a motion on this issue on February 1, 2013.   Language Line picks and

18   chooses when to follow rules and orders to suit its own tactics.   Cipollini's opinions – no matter how

19   Language Line was to characterize them – are the work of an expert being used to discredit another

20   expert.  This issue was twice before brought to the Special Master.  Language Line does not have the

21   right to simply ignore these prior procedures and rulings.

22          **B.     The Cipollini Declaration is Untimely Under the Deadlines Set by the Court and**

23                   **the Special Master.**

24          Language Line does not dispute, because it cannot, that the Cipollini Declaration was

25   submitted after all of the applicable deadlines.   It was submitted after the Special Master required the

26

27   seeks to strike is telling, and itself demonstrates Language Line knows that its tactics have been
     improper.

28

supplementation of Cipollini's opinions be complete by January 9, 2013. *Id.* at Ex. D.  And, it was

submitted without leave in violation of the Special Master's February 1, 2013 directive. *Id.* at Ex. H.

There is absolutely no basis to permit the Cipollini Declaration to stand in light of these flagrantly

ignored deadlines.  The fact that Language Line now contends that the methodologies Cipollini

undertook are so simple and will take only 4 hours to complete obviously begs the question why

Language Line delayed and laid in wait only to ambush LSA with these opinions after all of the

depositions and deadlines and in support of dispositive and pretrial motions.[2]  The Special Master's

orders are very clear and unequivocal that whatever might have been searched for and produced, it

should have been done by January 9, 2013 in advance of the expert's deposition.  Even after that, the

Special Master gave Language Line the chance to formally notice a motion to go beyond the record,

on February 1, 2013.  Language Line concedes it ignored that procedure.  Instead it just did what it

wanted and filed new material from Cipollini after all the deadlines had passed.  Language Line's

tactics should not be countenanced.

Language Line knows that, if the Court considers the Cipollini Declaration to be expert

opinion, that it must be excluded for failing to meet these deadlines unless the failure is substantially

justified or harmless.  FED. R. CIV. P. 37(c)(1).  Yet, Language Line does not even attempt to explain

its "substantial justification" or the alleged harmlessness of its delay.   Instead, it conclusorily

announces in a footnote that it failures are substantially justified and harmless, without, of course,

explaining why or how.  Opp. at 12, n.5.

Language Line further tries to mischaracterize the February 1, 2013 conference with the

Special Master to avoid its clear procedures and preclusive effect.  During that hearing, Language

Line claimed Cipollini found the September 2009 report in unallocated space and offered to provide

---

[2] Language Line complains that LSA's expert, Brian Wolfinger, had access to LSA's forensic images since March 2012.  That is correct, but so too did Language Line.  Language Line omits mentioning that LSA and Wolfinger only obtained access to those images through the Special Master, with the knowledge and consent of Language Line's counsel.  In fact, LSA obtained copies of the images at that time because the then-existing expert deadline was only a few weeks away. Language Line had the same opportunity at the same time to obtain these images for review and failed to do so.

**LSA'S REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF JOSEPH CIPOLLINI**
**CV 10-02605 RS**

LSA the "roadmap" to find the document and/or have Mr. Resnick of Evolver recreate Cipollini's search.  In its April 3, 2013 opposition, Language Line tries to argue that the February 1, 2013 ruling was limited to "ordering LSA or Evolver to conduct additional searches duplicating those of Mr. Cipollini or allowing Language Line to file a motion in limine to exclude testimony for failure to do so."  This position is untenable.

Again, the February 1, 2013 Order could not be clearer.  It provides:

> I advised counsel that, if Language Line wishes to pursue this issue, they must do so through a noticed motion, directed to me. Alternately, Language Line has the option of presenting this as a motion in limine at the time of trial, but I pointed out that counsel for LSA would have available to it at that time all existing arguments as to timeliness, prejudice, etc.

Buziak Decl., Ex. H.  The "issue" defined above was the newly discovered and untimely evidence that Cipollini found after his deposition.  There is no good faith dispute that this was the topic of the February 1, 2013 hearing and that Language Line was invited to present its views in a formal motion.  If there was any other interpretation, the Special Master would not have expressly recognized that LSA would have its existing arguments as to timeliness and prejudice.  At no point in time was there any issue on the table requiring *LSA* to run additional searches.  As noted above, the precise reason the Special Master instructed that he wanted a noticed motion would have been to avoid any ambiguity about what Language Line wanted and who should do it.  Having failed to avail itself of that procedure, Language Line cannot now claim there was some ambiguity in an obviously clear order so that it can circumvent the ruling.

Language Line inexplicably claims support for its position by arguing in a footnote that a motion in limine can only be for the purpose of excluding evidence.  Opp. at 9, n.2.  Language Line is completely wrong.  A motion in limine is used to include or exclude evidence at trial.  *United States v. Crowe*, 563 F.3d 969, 972 (9th Cir. 2009) (noting that defendants filed pre-trial motions in limine to exclude as well as to admit certain evidence at trial); *United States v. Yida*, 498 F.3d 945, 949 (9th Cir. 2007) (ruling on government's motion in limine seeking to admit testimony at trial); *Obrey v. Johnson*, 400 F.3d 691, 693 (9th Cir. 2005) (noting ruling on motion in limine to admit

8

1  certain statistical evidence).  "In Limine" does not mean "to limit" it means, "at the threshold" or

2  before trial.  Thus, Language Line's misinterpretation of the February 1, 2013 order does not excuse

3  its failure to comply with the Special Master's procedures required to submit the Cipollini

4  Declaration and its findings.

5      **C.    Cipollini Cannot Testify as a Lay Witness or Offer Lay Opinions Under the**

6          **Federal Rules of Civil Procedure or Evidence.**

7      Clearly conceding it cannot defend the Cipollini Declaration as written or based on the

8  procedure of how it was submitted, Language Line constructs a legal fiction that Cipollini is now a

9  lay witness.  This is neither accurate nor a basis for allowing his testimony in this record.  This

10  argument is made only to evade the Court's deadlines, the Special Master's rulings, and the

11  procedural rules.  Not only is he not a lay witness, but his testimony would not be allowed as a lay

12  witness under Federal Rule of Civil Procedure 26(a) or the Federal Rules of Evidence.  Indeed,

13  casting him as a lay witness makes his testimony even more untimely.

14      **1.    Language Line Failed to Disclose Cipollini as a Lay Witness**

15          **Under Fed. R. Civ. P. 26(a)(1) or During Fact Discovery**

16      Language Line was required to disclose, under Federal Rule of Civil Procedure 26(a)(1), "the

17  name and, if known, the address and telephone number of each individual likely to have

18  discoverable information—along with the subjects of that information—that the disclosing party

19  may use to support its claims or defenses." FED. R. CIV. P. 26(a)(1); *Yeti by Molly, Ltd. v. Deckers*

20  *Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) (finding exclusion sanctions appropriate for

21  failure to comply with Rule 26(a) disclosures).  Such disclosures are not just technical requirements,

22  they would have provided LSA notice of who it had to depose during the fact discovery phase of the

23  case.  Fact discovery, incidentally, ended almost a year earlier, on *April 20, 2012*.  [Dkt. 234].

24      Until its filing on April 3, 2013, Language Line never claimed – let alone disclosed under

25  Rule 26(a) – that Cipollini was a fact witness.  Indeed, Language Line kept Cipollini's identity from

26  LSA (as it was allowed to do for an expert witness) until December 17, 2012, when expert

27  designations and reports were due.  Language Line's failure to make this disclosure cannot be cured.

28

9

The fact discovery deadline closed almost a year ago and the case is supposed to be ready for trial shortly.

Language Line cites no controlling authority in support of its position that Cipollini did not need to be disclosed under Rule 26(a)(1) and the cases it cites do not support its argument at all.  In *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 757, the Seventh Circuit found that a party "properly disclosed all of the witnesses they proffered under Rule 26(a)(1)(A)," and "each of these witnesses was deposed by [the opposing party] in the regular course of discovery."  However, the party failed to identify certain of these witnesses as experts.  The Seventh Circuit permitted the disclosed fact witnesses to testify as fact witnesses but not as experts, because the party proffering those experts had not complied with the dictates of Rule 26(a)(2).  *Id.*  Language Line contends that *Musser* stands for the proposition that "parties not required to disclose identity of experts who will testify only as fact witnesses."  Opp. at 10.  As plainly set forth above, *Musser* does not stand for that proposition at all.  Moreover, unlike the party in *Musser*, Language Line failed to disclose Cipollini within the Rule 26(a)(1) fact discovery deadline.  Likewise, in *Gomez v. Rivera Rodiriguez*, 344 F.3d 103, 113 (1st Cir. 2003), the First Circuit held that the party proffering its lay witness had complied in full with Rule 26(a)(1) and did not need to further designate the witness as an expert under Rule 26(a)(2).  Here again, Language Line mischaracterizes *Gomez*, arguing that it stands for the proposition that "disclosure requirements of FRCP 26 does not apply to percipient witness who happens to be an expert."  Opp. at 10.  Language Line is wrong.  In both *Musser* and *Gomez*, the parties proffering the fact witness complied with Rule 26(a)(1).  Language Line has not.

### 2.    Cipollini Has <u>No</u> Personal Knowledge of the Facts in this Case Beyond Those He Learned as an Expert

The Federal Rules of Evidence are clear and unequivocal that a "witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness ***has personal knowledge of the matter***."  FED. R. EVID. 602 (emphasis added).  Here, Cipollini is Language Line's designated third-party expert witness, retained at some point in 2012, well after the events giving rise to this case took place.  Cipollini has ***absolutely no*** personal knowledge of any of the facts at

issue.  *All* of Cipollini's knowledge has been garnered from conversations with Language Line's counsel and documents in the record, which is hearsay and second-hand knowledge, at best. Although Cipollini was certainly permitted to rely on such evidence as an expert witness, he must rely on his own personal knowledge as a fact or lay witness.  He cannot do so because he has no such knowledge.

Likewise, Rule 701 only permits lay opinions that are: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) *not* based on scientific, technical, or other specialized knowledge within the scope of Rule 702."  FED. R. EVID. 701 (emphasis added).  Here, to the extent that Cipollini's "lay" opinions are "rationally based on [his] perception," under 701(a), they cannot be permitted because they are not based on his personal knowledge under Rule 602.

Moreover, an expert cannot be recast as a lay witness where the only reason his testimony would be relevant is based on his specialized knowledge, training and expertise under 701(c).  *Hoot Winc, LLC v. RSM McGladrey Fin. Process Outsourcing, LLC*, 2010 U.S. Dist. LEXIS 104096, 9-10 (S.D. Cal. Sept. 29, 2010) (holding that witness was an expert and not a lay witness where witness would "almost certainly make direct or indirect reference" to her "specialized training, education and experience.")  In fact, Rule 701 was amended in 2000 to avoid this exact tactic.  *See* FED. R. EVID. 701, advisory committee notes, noting that Rule 701 was amended in 2000 to add this provision to avoid allowing parties to dress an expert witness "in lay witness clothing"; *see also Marine Polymer Techs., Inc. v. HemCon, Inc.,* 2009 U.S. Dist. LEXIS 23987, 21-22 (D.N.H. 2009) (excluding overdue submission of expert declaration that was claimed to be a "lay opinion" because the statements are based on "scientific, technical, or other specialized knowledge").  If it were otherwise, parties would be encouraged to "offer all kinds of specialized opinions without pausing first properly to establish the required qualifications of their witnesses."  *United States v. Figueroa-Lopez*, 125 F.3d 1241, 1246 (9th Cir. 1997) (excluding purported lay witness testimony because the opinions offered required use of "specialized knowledge).  "The mere percipience of a witness to the facts on which he wishes to tender an opinion does not trump Rule 702."  *Id.*  Here, Cipollini's opinions are

very much based on his "scientific, technical, or other specialized knowledge" and, like the expert in *Hoot Winc*, are only relevant ***because of*** this specialized knowledge.    Accordingly, Cipollini's opinions that he "found" the September 2009 Report are not lay opinions.

The two cases cited by Language Line are completely distinguishable.    The first case Language Line cites stands for the unremarkable proposition that fact witnesses with personal knowledge of the facts of the case may also be permitted to testify as experts based on their professional backgrounds and credentials.  *Dorn v. Burlington Northern Santa Fe Railroad Co.*, 397 F.3d 1183, 1193 (9th Cir. 2005) (investigating officer who "had investigated…the accident on the day that it occurred," also served as expert witness on cause of accident).    Cipollini is the exact opposite; he is an expert witness without ***any*** personal knowledge of the case.    Therefore, *Dorn* does not help Language Line.    Similarly, the investigating detectives in *In re Ostling*, 266 B.R. 661, 664 (E.D.Bankr. 2001), testified "to facts of which they had personal knowledge" and then appropriately offered lay opinions based on this extensive personal knowledge.  *Id.* Neither *Dorn* nor *Ostling* applies here, where Language Line is attempting to recast its expert as a lay witness.

**D.    Language Line Concedes that Cipollini Used Forensically-Unreliable Software and Fails to Rebut LSA's Evidence that He Did Not "Find" the September 2009 Report.**

Language Line does not address and therefore concedes that *RecoverMyFiles* is not a reliable methodology used in the field of digital forensics.    Opp. at 12.    Language Line further does not dispute any evidence set forth in the Declaration of Brian T. Wolfinger and LSA's Motion regarding the precise reasons why *RecoverMyFiles,* as used by Cipollini, is so unreliable.    It simply does not recover files with reference to system-level metadata and therefore, it cannot be said that the September 2009 Report named "Schwartz Run Rate Decliners – Sep. 2009.xls" was "found."    At best, what can be said is that fragments of that file were found in unallocated space.    This is simply not the same as finding the entire document, identical, and intact on these computers.    Language Line's concessions and failure to rebut this argument should automatically result in striking Cipollini's Declaration and opinions.    Moreover, as explained above, Language Line cannot get

**LSA'S REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF JOSEPH CIPOLLINI**
**CV 10-02605 RS**

1  around this fatal flaw by arguing that Cipollini is simply a lay witness and circumventing the

2  procedures applicable to disclosing and deposing lay witnesses.

3      Even if the Special Master does not want to delve into the many layers of "unallocated

4  space," Language Line's tactics should be readily rejected.  Three experts (including Cipollini

5  originally) could not find the September 2009 Report using search terms, hash tag searches and state

6  of the art forensic software.  So now Language Line wants to avoid all those findings by converting

7  Cipollini into a lay witness, sending him to Staples and buying a wholly unreliable piece of software

8  (which intentionally did not search the failsafe of the Master File Table) so he can create new

9  evidence in unallocated space and say "I found the smoking gun," after the fact.  Language Line's

10 desperation is simply not a basis for allowing this type of unreliable and legally incompetent

11 testimony into a case after the close of fact and expert discovery.

12     Finally, Language Line cannot be permitted to get in through the back door what it has failed

13 to properly introduce through the front.  Whether run by Cipollini or Language Line's counsel,

14 evidence recovered using *RecoverMyFiles* is based on "scientific, technical, or other specialized

15 knowledge" but it must be excluded because it lacks the reliability required by Rule 702 and

16 *Daubert* as set forth in LSA's Motion.  Cipollini's Declaration speaks for itself: the files he claims to

17 have found in unallocated space he claims are the September 2009 Report (or at least large portions

18 of it).  This is the textbook example of trying to slip in otherwise improper expert testimony.  The

19 Special Master told Language Line to put all five sheets of paper into the record before the

20 depositions.  That mandate should be all the stronger now that Language Line is on sheets numbers

21 six or seven, and the last ones were printed with software costing $69.99.  Opp. at 12.

22     **E.     Language Line Cannot Change the Parties' Protocol at this Late Date By**

23           **Raising the Issue in Opposition to LSA's Motion**

24     Language Line inexplicably requests that the Special Master rearrange the parties' protocol

25 regarding the search of LSA's forensic images, offering absolutely no legal or rational basis to do so.

26 The protocol was designed to permit Language Line's expert to examine the images for the purpose

27 of providing a rebuttal expert report.  Language Line cannot be permitted unfettered access to these

28

13

**LSA'S REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF JOSEPH CIPOLLINI**
**CV 10-02605 RS**

1   images at this late date to conduct its own "analysis" using *RecoverMyFiles* for all of the reasons

2   explained in LSA's Motion: it is unreliable and inaccurate methodology and one that cannot be

3   permitted in court for the purpose that Language Line intends, that it "found" the September 2009

4   Report.

5   **IV.       CONCLUSION**

6          For the foregoing reasons, and those set forth in LSA's opening Motion, this Court should

7   grant LSA's Motion to Strike the Declaration of Joseph Cipollini.

8   DATED:  April 5, 2013                     BLANK ROME LLP

9

10                                            By: s/*Scott F. Cooper*
                                                  Scott F. Cooper

11                                                Cheryl S. Chang
                                                  Leigh Ann Buziak

12                                                Michael T. Murphy
                                             Attorneys for Defendant and Counterclaimant

13                                           LANGUAGE SERVICES ASSOCIATES, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**LSA'S REPLY IN SUPPORT OF MOTION TO STRIKE DECLARATION OF JOSEPH CIPOLLINI**
**CV 10-02605 RS**